# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MASSACHUSETTS
# WESTERN DIVISION

```
_____
                                )
    In re:                      )
                                )   Chapter 13
    DAVID GIZA,                 )   Case No. 07-41782-HJB
                                )
            Debtor              )
                                )
_____ )
                                )
                                )
                                )
                                )
    In re:                      )
                                )   Chapter 13
    LINDA Y. GIZA,              )   Case No. 09-30886-HJB
                                )
            Debtor              )
                                )
_____ )
                                )
                                )
    DAVID GIZA and              )
    LINDA Y. GIZA,              )
                                )   Adversary Proceeding
                                )   No. 09-04099
            Plaintiffs          )
                                )
        v.                      )
                                )
    AMCAP MORTGAGE, INC.,       )
    DEUTSCHE BANK NATIONAL TRUST)
    COMPANY, AS TRUSTEE, and    )
    ONEWEST BANK, FSB,          )
                                )
            Defendants          )
_____ )
```

```
                                         )
       LINDA Y. GIZA,                    )
                                         )     Adversary Proceeding
                                         )     No. 09-03032
                   Plaintiff             )
                                         )
             v.                          )
                                         )
       AMCAP MORTGAGE, INC.,             )
       DEUTSCHE BANK NATIONAL TRUST      )
       COMPANY, AS TRUSTEE, and          )
       ONEWEST BANK, FSB,                )
                                         )
                   Defendants            )
                                         )
```

## **MEMORANDUM OF DECISION**

Before the Court is "Defendants' Motion to Dismiss Plaintiffs' Complaint" (the "Motion to Dismiss"),[1] filed by two of the three defendants in these adversary proceedings, Deutsche Bank National Trust Company, trustee under the Pooling and Servicing Agreement Series ITF INABS 2006-C ("Deutsche Bank"), and OneWest Bank, FSB ("OneWest") (together, the "Defendants"). By their Motion to Dismiss, the Defendants seek to have the Court determine the following issues under the federal Truth in Lending Act ("TILA") and the Massachusetts Consumer Credit Cost Disclosure Act ("MCCCDA"):[2] (1) whether statutory damages under TILA or MCCCDA can be assessed against a mortgage

---

[1] The Plaintiffs, David and Linda Giza, filed separate bankruptcy cases and an adversary proceeding was filed in each. The complaints, motions to dismiss, and all other pleadings in both actions are identical with non-material exceptions. Therefore, given identical facts and issues, the matters have been consolidated for the purpose of singular determination.

[2] All references to TILA refer to the federal Truth in Lending Act, 15 U.S.C. §§ 1601 et seq. MCCCDA is the Massachusetts equivalent of the Truth in Lending Act, Mass.Gen. Laws ch. 140D (2002).

assignee or servicer under the facts presented here; (2) whether the remedy of mortgage rescission under TILA and MCCCDA is dependent upon the borrower first tendering in full the loan proceeds to the note holder if the borrower is a Chapter 13 debtor; and (3) whether a mortgage holder or servicer has violated the automatic stay under § 362(a) of the Bankruptcy Code by dint of its refusal to release the lien on the subject property in advance of the Court's determination as to the validity of a disputed rescission claim.

I.    FACTS AND TRAVEL OF THE CASE

When ruling on a motion to dismiss, the court must accept all of the plaintiffs' well-pleaded facts as true. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); Pasdon v. City of Peabody, 417 F.3d 225, 226 (1st Cir. 2005). "Ordinarily, a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein" on a motion to dismiss, Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001); but "[t]here is, however, a narrow exception 'for documents the authenticity of which are not disputed by the parties; . . . for documents central to plaintiffs' claim; or for documents sufficiently referred to in the compliant.'" Id. (citations omitted). Those documents merge into the pleadings and "the court may properly consider . . . [them even] under a Rule 12(b)(6) motion to dismiss." Id. (citations omitted). Therefore, for the purposes of its determination, the Court will consider relevant exhibits attached to later pleadings, the authenticity of which are undisputed.

David and Linda Giza ("David" and "Linda", together the "Gizas") are spouses residing at 15 Orchard Street in Palmer, Massachusetts (the "Property"). The Gizas purchased the Property, a single family home, on January 8, 1988, subject to a mortgage.

On or about May 24, 2006,[3] the Gizas refinanced the Property and granted a new mortgage to Amcap Mortgage, Inc. ("Amcap"),[4] one of the defendants.  At the closing, each of the Gizas executed the replacement mortgage instrument, but only David signed the Promissory Note and he alone received the cash proceeds resulting from that refinance.  With respect to the Notices of Right to Cancel, two of which are required to be provided to <u>each</u> borrower, and the Truth-in-Lending Disclosure Statement, one of which is required to be provided to <u>each</u> borrower, under TILA and MCCCDA, Amcap's agent delivered the required two Notices of Right to Cancel to David, but only one to Linda.  And Amcap's agent provided only one Truth in Lending Disclosure Statement to the Gizas, collectively.[5]  However, David and Linda both signed acknowledgments stating they had received the appropriate number of both the Notices of Rights of Cancel (two each) and Federal Truth in Lending Disclosure Statements (one each) (Defs.' Mot. Dismiss, Ex. C, D).  On or about February 21, 2008, the Amcap mortgage was assigned to Deutsche Bank.  The assignment was recorded on June 24, 2008.

The Gizas have filed separate Chapter 13 petitions with this Court; David on May

---

[3] May 30, 2006 is the closing date stated by the Gizas in their complaints.  In fact, all of the closing documents are dated May 24, 2006, rather than May 30, 2006.  However, this discrepancy is immaterial to the outcome here.

[4] As of the date of this opinion, Amcap has not filed an answer in either adversary proceeding nor has default entered against Amcap.  Therefore, this Court takes no stance as to the Gizas' case vis-a-vis Amcap.

[5] This was not clearly stated by the Gizas in either of their complaints, but it seems to be what the complaints imply.  <u>See</u> David & Linda Compl. ¶¶ 16-17 ("At the closing, defendant's agent presented plaintiff Linda Giza with one document entitled 'Notice of Right to Cancel,' and presented both plaintiffs with only one Truth in Lending disclosure form.  The failure to provide plaintiffs, at the loan closing, with four copies of a notice of the right to rescind The Transaction (two per borrower) . . .").

10, 2007[6] and Linda on May 27, 2009. On June 14, 2008, the Gizas' counsel sent a notice of rescission (the "Rescission Letter") to Amcap, Deutsche Bank, and OneWest, or their predecessors. In the Rescission Letter, the Gizas stated that they wished to rescind their mortgage on the grounds that they had received at closing an insufficient number of Notice of Right to Cancel forms and Truth in Lending Disclosure Statements. They also stated there that: "[u]pon Amcap's performance, David Giza and Linda Giza will tender all sums to which Amcap is entitled. In light of the pending Chapter 13 filing, David Giza and Linda Giza assert that tender should consist of a *pro rata* dividend to the unsecured creditors." (Defs' Mot. Dismiss, Ex. E).

In 2009, virtually identical complaints[7] (the "Complaints") were filed in adversary proceedings brought by David and Linda in their respective bankruptcy cases against the Defendants to determine the validity and extent of the recorded mortgage lien in light of the Rescission Letter. In their respective adversary proceedings, consolidated for the purposes of determination of the Motion to Dismiss, the Gizas together seek, under TILA and MCCCDA, statutory damages, injunctive relief, costs, and attorney's fees for the failure of the Defendants to honor the Gizas' mortgage rescission. The Gizas also seek the opportunity to later amend their complaints under Massachusetts General Laws Chapter

---

[6] The Complaint alleges that David filed his bankruptcy case on June 2, 2007. That is incorrect; the case was filed on May 30, 2007. But the difference is not material to the issues before this Court, and although the Court must accept all well-pleaded facts as true, the Court is also permitted to take judicial notice of its own docket. See LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.), 196 F.3d 1, 8 (1st Cir. 1999) ("[t]he bankruptcy court appropriately took judicial notice of its own docket"); In re Marrama, 345 B.R. 458, 463 n.9 (Bankr. D. Mass. 2006) ("I may take judicial notice of the dockets and documents in the Debtor's two pending cases.")

[7] The primary difference between the two complaints is that only Linda seeks redress for violation of the automatic stay.

5

93A after the requisite thirty day period has passed.[8] Finally, the complaint in Linda's case seeks redress for continued automatic stay violations by the Defendants with regard to her interest in the Property. Because she never signed the Promissory Note or received the loan proceeds, Linda alleges that the Defendants' continued refusal to release the lien on her interest following the Rescission Letter is a violation of 11 U.S.C. § 362(a)(3).

II.     POSITIONS OF THE PARTIES

In their Motion to Dismiss, bought under Federal Rule of Bankruptcy Procedure 7012(b) and Federal Rule of Civil Procedure 12(b)(6), Deutsche Bank and OneWest make four major arguments. First, they maintain that the Gizas cannot rescind Deutsche Bank's mortgage where they have failed, and are unable, to tender the loan proceeds to Deutsche Bank upon rescission. Second, Deutsche Bank argues that as assignee of the mortgage it cannot be held liable for statutory damages, including attorney's fees and costs, for TILA and MCCCDA violations because no deficiencies were apparent on the face of the loan documents assigned to Deutsche Bank. Third, OneWest argues that, as the loan servicer and never the owner of the loan, it is exempt from liability for statutory damages pursuant to § 1640 of TILA or § 32 of MCCCDA. Finally, both Defendants argue that there has not been a forfeiture of the loan proceeds nor a violation of the automatic stay.

---

[8] Count II contains only the word "Reserved." But as no amended complaint has been filed and the Defendants have not been given the opportunity to defend any Chapter 93A claims, Count II must be dismissed as devoid of meaning. Motions to Amend the Complaints are to be filed in compliance with the procedures mandated by the Federal Rules of Bankruptcy Procedure, and little is to be gained by predicting their further occurrence in the absence of follow-up. Further, the Court views as untimely the arguments introduced by the Gizas' counsel late in the briefing process regarding Deutsche Bank's rights to enforce the mortgage and OneWest's failure to respond to a Qualified Written Request. These were introduced after this matter had already been taken under advisement and without leave of the Court.

6

The Gizas object to the Motion to Dismiss and maintain the validity of their rescission.

III.   DISCUSSION

    A.   The Motion to Dismiss Standard

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain only "a short and plain statement of the claim showing that the pleader is entitled to relief."[9] Fed. R. Civ. P. 8(a)(2). But "[w]hile a complaint attacked by a Rule 12(b)(6)[10] motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp., 550 U.S. at 555. In a complaint, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true." Id. (emphasis removed). Rule 8(a)(2) "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citations omitted). However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. at 1950. "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." Id. (citations omitted).

---

[9] Federal Rule of Civil Procedure 8(a)(2) applies to bankruptcy proceedings through Federal Rule of Bankruptcy Procedure 7008(a)(2).

[10] Federal Rule of Civil Procedure 12(b)(6) applies to bankruptcy proceedings through Federal Rule of Bankruptcy Procedure Rule 7012(b)(6).

B.  Count I: Failure to Honor Rescission Under TILA and MCCCDA

1. **Relevant TILA and MCCCDA Background**

TILA and MCCCDA were enacted "to assure a meaningful disclosure of credit terms so that the consumer . . . [would] be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a) (2009). See also Desrosiers v. Transamerica Fin. Corp. (In re Desrosiers), 212 B.R. 716, 722 (Bankr. D. Mass. 1997). "[T]he regulations promulgated under TILA and [M]CCCDA are substantially similar. . . . The only differences are with respect to the statues of limitation for rescission and damage claims." Whitley v. Rhodes Fin. Servs., Inc. (In re Whitley), 177 B.R. 142, 147-48 (Bankr. D. Mass. 1995). Therefore, [M]CCCDA "should be construed in accordance with federal law." Desrosiers, 212 B.R. at 722 (citations omitted). See also McKenna v. First Horizon Home Loan Corp., 475 F.3d 418, 422 (1st Cir. 2007) ("the MCCCDA should be construed in accordance with the TILA").

One key provision under both TILA and MCCCDA allows a borrower to rescind a loan that is secured by the borrower's principal dwelling if the requisite disclosures required by the statute were not provided. Dimare v. Ameriquest Mortgage Co. (In re Dimare), No. 08-1046, 2009 WL 5206628, at *6 (Bankr. D. Mass. Dec. 22, 2009). Section 10(a) of the MCCCDA,[11] applying to property "used as the principal dwelling of the person to whom

---

[11]  The Board of Governors of the Federal Reserve System has enacted a body of regulations entitled "Regulation Z" interpreting TILA, pursuant to authority granted to them in the statute. Desrosiers, 212 B.R. at 722, n.5. As part of Regulation Z, "the Board exempted credit transactions subject to [M]CCCDA 'from chapters 2 and 4 of [TILA]' . . . Chapter 2 of the statute includes §§ 1631 through 1641." Id. at n.6 (this includes all the provisions of MCCCDA relevant to the Motion to Dismiss). Accordingly, this Court will hereafter cite only to provisions of the MCCCDA

8

credit is extended," gives the obligor "the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required by this chapter, whichever is later."  Mass. Gen. Laws ch. 140D, § 10(a) (2002).  To rescind, the borrower must notify the creditor of his or her intent to do so, in accordance with regulations of the commissioner.  Id.  Both statutes provide "that the period for canceling a residential loan transaction ends three business days after the latest of three events: the closing; the dates the consumer receives the required Truth-in-Lending disclosures; or the date the consumer receives the proper notice of the right to cancel."  Dimare, 2009 WL 5206628, at *6.  Here, David and Linda state they have not received required disclosures and rescission forms and have notified both Deutsche Bank and OneWest of their intention to rescind the mortgage.

### 2. **Assignee and Servicer Liability Under MCCCDA**

Section 33(d)(1) of MCCCDA provides that:

> any civil action against a creditor with respect to a consumer credit transaction secured by real property for a violation of this chapter and any proceeding under section six may be maintained against any assignee of such creditor only if –
>
> (i) the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement provided in connection with such transaction pursuant to this chapter; and
>
> (ii) the assignment to the assignee was voluntary.

Mass. Gen. Laws ch. 140D, § 33(d)(1) (2002).  The section further explains:

---

since TILA is technically inapplicable.  Nevertheless, because the respective provisions under the two statutes are identical, the Court will cite to case law regardless of whether that court is referring to the relevant provision of TILA or MCCCDA.

> For the purposes of this section, a violation is apparent on the face of the disclosure statement if:
>
> (i) the disclosure can be determined to be incomplete or inaccurate by a comparison among the disclosure statement, any itemization of the amount financed, the note, or any other disclosure of disbursement; or
>
> (ii) the disclosure statement does not use the terms or format required to be used by this chapter.

Mass. Gen. Laws ch. 140D, § 33(d)(1) (2002). Further, except in rescission proceedings, § 33(b) provides that in any action taken against an assignee, written acknowledgments by borrowers of receipt of disclosures are conclusive proof of delivery when the assignee has no contrary knowledge. Mass. Gen. Laws ch. 140D, § 33(b) (2002).

In their Complaints, the Gizas allege that they did not receive sufficient numbers of disclosures. However, neither alleges there is any violation apparent on the face of any disclosure statement. Further, Exhibits C and D completed by the Gizas at the Amcap closing acknowledge their receipt of the appropriate number of disclosures required by MCCCDA. Therefore, Deutsche Bank is shielded from statutory damages under MCCCDA, and all claims for statutory damages against Deutsche Bank under MCCCDA must be dismissed.

Attorney's fees are addressed under MCCCDA in § 32(a)(3) as follows:

> (a) Except as otherwise provided in this section, any creditor who fails to comply with any requirement imposed under this chapter or any rule or regulation issued thereunder including any requirement under section ten [the rescission section] with respect to any person is liable to such person in an amount equal to the sum of:
> . . .
>
> > (3) In the case of any successful action to enforce the foregoing liability or in any action in which a person is determined to have a right of rescission under section ten, the costs of the action, together with a reasonable attorney's fee as determined by the court.

Mass. Gen. Laws ch. 140D, § 32(a)(3) (2002). While some federal courts have interpreted this provision differently in the TILA context,[12] the Supreme Judicial Court has held that attorney's fees and costs are treated like all other statutory damages under MCCCDA. Mayo v. Key Fin. Servs., Inc., 678 N.E.2d 1311, 1313 (Mass. 1997). The court there ruled that "[a]lthough a borrower is given the same right of rescission against an assignee of an obligation as against the original lender . . ., other rights may be asserted under G.L. c. 140D against an assignee 'only if the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement.'" Id. See also Wells Fargo Bank, N.A. v. Jaaskelainen, 407 B.R. 449, 462 (D. Mass. 2009) (affirming attorney's fees that had been previously awarded against the assignee only because the issue was first raised on appeal and therefore waived, but excluding all later accrued attorney's fees against the assignee). Therefore, despite the split in the federal courts over whether attorney's fees and costs may be sought from assignees following a successful rescission action, the answer in Massachusetts is settled. The Gizas' claims for attorney's fees and costs under MCCCDA § 32(a)(3) must be dismissed.

In the Gizas' Brief in Support of their Opposition to the Motion to Dismiss, they withdraw their argument for MCCCDA liability against OneWest in acknowledgment that OneWest is the loan servicer and has no statutory liability under MCCCDA. (Br. Supporting

---

[12] Some federal courts have allowed borrowers to collect attorney's fees and costs from assignees after succeeding in a rescission action under TILA. See Briggs v. Provident Bank, 349 F. Supp.2d 1124,1134 (N.D. Ill. 2004) (finding assignee liability is limited to where the disclosure violation is apparent on the face of the documents unless Congress intended otherwise. Attorney's fees related to successful rescission actions are one such case.); Blythe v. HSBC Bank Usa, N.A. (In re Blythe), 413 B.R. 205, 212 (Bankr. E.D. Pa. 2009) ("Fees and costs are coexistent with liability").

11

Opp'n to Defs.' Mot. Dismiss 13). Therefore, the claims for statutory damages against OneWest will also be dismissed.

### 3. **Rescission and Tender**

Section 33(c) of MCCCDA provides that "[a]ny consumer who has the right to rescind a transaction under section ten may rescind the transaction as against any assignee of the obligation." Mass. Gen. Laws ch. 140D, § 33(c) (2002). However, Deutsche Bank argues that rescission is unavailable to the Gizas because they have failed to tender the loan proceeds to Deutsche Bank and are unable to do so. Deutsche Bank supports its position with a recent decision by the United States District Court for the District of Massachusetts, which held that rescission could not be effective until tender of the loan proceeds was made. Wells Fargo Bank, N.A., 407 B.R. at 459-63. Notwithstanding Judge Zobel's thoughtful opinion, this Court respectfully takes a different view.

Section 10(b) of MCCCDA prescribes the process that is to occur once a consumer takes the initial steps to rescind his or her loan:

> When an obligor exercises his right to rescind under subsection (a), he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such a rescission. Within twenty days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, down payment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. If the creditor has delivered any property to the obligor, the obligor may retain possession of it. Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impractical or inequitable, the obligor shall tender its reasonable value. Tender shall be made at the location of the property or at the residence of the obligor, at the option of the obligor. If the creditor does not take possession

of the property within twenty days after tender by the obligor, ownership of the property rests in the obligor without obligation on his part to pay for it. The procedures prescribed by this subsection shall apply except when otherwise ordered by a court.

Mass. Gen. Laws ch. 140D, § 10(b) (2002). Section 32.23 of the Code of Massachusetts Regulations provides further clarification:

(4) Effects of Rescission

(a) When a consumer rescinds a transaction, the security interest giving rise to the right of rescission becomes void and the consumer shall not be liable for any amount, including any finance charge.

(b) Within 20 calendar days after receipt of a notice of rescission, the creditor shall return any money or property that has been given to anyone in connection with the transaction and shall take any action necessary to reflect the termination of the security interest.

(c) If the creditor has delivered any money or property, the consumer may retain possession until the creditor has met its obligation under 209 CMR 32.23(4)(b). When the creditor has complied with 209 CMR 32.23(4)(b), the consumer shall tender the money or property to the creditor or, where the latter would be impracticable or inequitable, tender its reasonable value. At the consumer's option, tender of property may be made at the location of the property or at the consumer's residence. Tender of money must be made at the creditor's designated place of business. If the creditor does not take possession of the money or property within 20 calendar days after the consumer's tender, the consumer may keep it without further obligation.

(d) The procedures outlined in 209 CMR 32.23(4)(b) and (c) may be modified by court order.

209 Mass. Code Regs. 32.23 (2010). The First Circuit has held that when the right to rescission is disputed, rescission is not automatic and occurs when a designated decision maker finds the conditions for rescission have been met. Large v. Conesco Fin. Servicing Corp., 292 F.3d 49, 55 (1st Cir. 2002).

Some courts, including the Jaaskelainen court, have interpreted the final sentence of § 10(b) of MCCCDA to give courts the equitable power to condition rescission on tender

13

by the borrower. Wells Fargo Bank, N.A., 407 B.R. at 462; Am. Mortgage Network Inc. v. Shelton, 486 F.3d 815, 820-21 (4th Cir. 2007); Yamamoto v. Bank of N.Y., 329 F.3d, 1167, 1171 (9th Cir. 2003). However, this Court interprets 209 Mass. Code Regs. 32.23(d) differently. The MCCCDA regulations accompanying § 10 empower the court to modify procedures surrounding the rescission process – not to alter the voiding of the security interest itself. Part (d) of these regulations state only "[t]he procedures outlined in 209 CMR 32.23(4)(b) and (c) may be modified by court order" – these procedures address the process by which rescission occurs *after* the security interest has been voided.[13]

When a security interest is voided, the underlying claim becomes unsecured, and the Bankruptcy Code provides for how all unsecured claims must be treated in bankruptcy by the Chapter 13 plan under 11 U.S.C. § 1322(a)(3). The debtor may designate unsecured claims into different classes, but only if the designation does not discriminate unfairly against any class so designated. 11 U.S.C. § 1322(b)(1). And once a class is designated, the plan must "provide the same treatment for each claim within a particular class. . ." 11 U.S.C. § 1322(a)(3). Tender in full of the Gizas' obligation to Deutsche Bank – should this Court otherwise find that the conditions for rescission have been met – would violate the requirements of § 1322(a)(3) by giving Deutsche Bank's unsecured claim preferential treatment. Even if practical, such a payment would rob other unsecured

---

[13] The Supreme Court has held that Regulation Z is "binding in the courts unless procedurally defective, arbitrary or capricious in substance or manifestly contrary to the statute." Household Credit Servs., Inc. v. Pfennig, 541 U.S. 232, 242 (2004) (citations omitted). The Massachusetts Supreme Judicial Court has also indicated that "'[w]here [an agency's] statutory interpretation is reasonable . . . the court should not supplant [the agency's] judgment.'" DiVittorio v. HSBC Bank USA, N.A., 423 B.R. 391, 393 (D. Mass. 2010) (citing Mass. Med. Soc. v. Comm'r of Ins., 520 N.E.2d 1288, 1298 (Mass. 1988)).

creditors of most, if not all, of the dividends on their unsecured claims. Inasmuch as Deutsche Bank's unsecured claim would be no different in character as any other, classifying the claim differently would be just the type of unfair discrimination as is expressly prohibited by § 1322(a)(3).

Even if the Jaaskelainen view is correct and tender is a requirement for rescission, the outcome should be the same. In Jaaskelainen, the court still emphasized that "traditional equitable notions" were an important factor to consider when crafting appropriate tender. Wells Fargo Bank, N.A., 407 B.R. at 462. In remanding the case back to the bankruptcy court, the court urged:

> consideration of the appropriate conditions to impose on Debtors' exercise of rescission. In undertaking this evaluation the bankruptcy court should consider traditional equitable notions, including such factors as the severity of Appellants' MCCCDA violation *and the degree to which Debtors are able to pay the principal amount*.

Id. (emphasis added). Indeed, in a Chapter 13 case, this Court, sitting as a court of equity, is well-suited to decide a debtor's ability to pay his or her creditors, including those creditors whose claims may be repaid in whole or in part on account of their violations of TILA and MCCCDA. And, to the extent that such discretion is itself limited by the provisions of Chapter 13, that limitation is one prescribed by Congress in 11 U.S.C. § 1322(a)(3). To hold otherwise also would strike at the goals Congress sought to achieve in both the Bankruptcy Code and TILA. As the court stated in In re Piercy, "[i]t would be palpably unfair to deny the relief to which a consumer is entitled under TIL[A] because that consumer has also availed himself of bankruptcy relief. To do so would require that the consumer choose between bankruptcy and TIL[A], something neither form of statutory relief contemplates." In re Piercy, 18 B.R. 1004, 1007 (Bankr. W.D. Ky. 1982).

Accordingly, the Court will not dismiss the Gizas' claim for rescission but will, if the conditions for rescission are otherwise met, determine the amount of tender and order the Gizas to classify that claim and treat it consistently with those of other unsecured creditors of these debtors.

### C.    Count III: Violation of the Automatic Stay

Linda alone seeks redress in her complaint for violation of the automatic stay for the Defendants' failure to release the mortgage lien on her interest in the Property. Linda complains that, because she never signed the promissory note or received the excess loan proceeds, the Defendants' continued refusal to release the lien on her interest in the Property, following the Rescission Letter, is a violation of 11 U.S.C. § 362(a)(3).

Ignoring for the moment the glaring fact that Linda did sign the mortgage and received consideration by way, at least, of the payment by the new mortgagee of her obligation to the prior mortgagee, there is a timing problem that also haunts her position. In Large, the First Circuit stated that "[i]f a lender disputes a borrower's purported right to rescind, the designated decision maker . . . must decide whether the conditions for rescission have been met." Large, 292 F.3d at 55. Therefore, a borrower's claim for rescission under MCCCDA is not automatic, but once disputed, awaits determination of its validity from a decision maker. Id. Accordingly, under the best of circumstances, the disputed mortgage is not void until this Court or some other court with the requisite jurisdiction, says so. Defendants' attempt to preserve the status quo and the disputed lien *pendente lite*, and in this case until consummation of the Debtors' Chapter 13 plan, without more, is not a violation of the automatic stay under § 362(a)(3).

IV.     CONCLUSION

The Motion to Dismiss all counts of the Complaint against OneWest is GRANTED. The Motion to Dismiss the Complaint against Deutsche Bank is GRANTED in part and DENIED in part, insofar as (i) the claims for statutory damages or attorney's fees under Count I are DISMISSED; (ii) the claim for rescission in Count I is NOT DISMISSED, but preserved for evidentiary hearing; (iii) any claim that may have been intended under Count II is STRUCK; and (iv) the claim asserted in Count III is DISMISSED.

Orders consistent with this Memorandum will issue accordingly.

DATED:   April 15, 2010

By the Court,

_____

Henry J. Boroff
United States Bankruptcy Judge