# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MASSACHUSETTS
# WESTERN DIVISION

_____
)
In re:                             )
                                   )   Chapter 13
DAVID GIZA,                        )   Case No. 07-41782-HJB
                                   )
                                   )
        Debtor                     )
                                   )
_____)
                                   )
                                   )
                                   )
                                   )
In re:                             )
                                   )   Chapter 13
LINDA Y. GIZA,                     )   Case No. 09-30886-HJB
                                   )
        Debtor                     )
                                   )
_____)
                                   )
DAVID GIZA and                     )
LINDA Y. GIZA,                     )
                                   )
                                   )   Adversary Proceeding
                                   )   No. 09-03032
        Plaintiffs                 )
                                   )
    v.                             )
                                   )
AMCAP MORTGAGE, INC.,              )
DEUTSCHE BANK NATIONAL TRUST       )
COMPANY, AS TRUSTEE, and           )
ONEWEST BANK, FSB,                 )
                                   )
        Defendants                 )
_____)

1

**MEMORANDUM OF DECISION**

By their "Motion to File First Amended Complaint" (the "Motion to Amend"), the plaintiffs, David and Linda Giza ("David" and "Linda", together the "Gizas"), seek leave to make several significant changes to their original complaint.[1] The defendants, Deutsche Bank National Trust Company, As Trustee, and OneWest Bank, FSB ("Deutsche Bank" and "OneWest", together the "Defendants") adamantly oppose. After careful review of Fed. R. Civ. P. 15(a)(2),[2] as interpreted and applied by the First Circuit Court of Appeals and a balancing of the interests of both the Gizas and the Defendants in this hotly contested adversary proceeding, the Court will deny the Motion to Amend in part and allow it in part.

I.   FACTS AND TRAVEL OF THE CASE

The Gizas are spouses residing at 15 Orchard Street in Palmer, Massachusetts (the "Property") and debtors in separately filed Chapter 13 cases. On January 8, 1988, they purchased the Property, subject to a purchase money mortgage. On May 24, 2006, the Gizas refinanced the Property and granted a new mortgage to Amcap Mortgage, Inc.

---

[1] As further described below, David and Linda filed separate but nearly identical adversary proceedings. After this Court's prior decision on the Defendants' motion to dismiss both complaints, see In re Giza, 428 B.R. 266 (Bankr. D. Mass. 2010), all appearing parties requested that the adversary proceedings be consolidated. That request was granted.

[2] Fed. R. Civ. P. 15(a)(2) applies to bankruptcy proceedings through Fed. R. Bankr. P. 7015.

2

("Amcap").[3] On February 21, 2008, the Amcap mortgage was assigned to Deutsche Bank. The assignment was recorded on June 24, 2008.

David filed a Chapter 13 case in this Court on May 10, 2007. Linda filed a separate Chapter 13 case on May 27, 2009. In between, on June 14, 2008, the Gizas' counsel sent a notice of rescission (the "Rescission Letter") to Amcap, Deutsche Bank, and OneWest. In the Rescission Letter, the Gizas stated they wished to rescind their mortgage for violations of the federal Truth in Lending Act ("TILA") and Massachusetts Consumer Credit Cost Disclosure Act ("MCCCDA").

On May 30, 2009, David instituted the instant adversary proceeding against Amcap, Deutsche Bank, and OneWest. Less than a month later, Linda filed her nearly identical adversary proceeding. By their virtually identical complaints, the Gizas sought to 1) determine the validity and extent of the recorded mortgage in light of the Rescission Letter and 2) obtain, under TILA and MCCCDA, statutory damages, injunctive relief, costs, and attorney's fees for the failure of the Defendants to honor their mortgage rescission. The Gizas also sought to "reserve" a cause of action under Massachusetts General Laws Chapter 93A.[4] Finally, the complaint in Linda's case sought redress for alleged automatic stay violations by the Defendants with regard to her interest in the Property.

---

[3] As of the date of this opinion, Amcap has not filed an answer in this adversary proceeding nor has default entered against Amcap. In their proposed Amended Complaint, the Gizas allege that "[u]pon information and belief, defendant Amcap was voluntarily dissolved on October 31, 2008." Am. Compl. ¶ 5. Although the Gizas sought in the proposed Amended Complaint to bring these same claims against Robert Williams, the alleged principal of Amcap, those claims have now been withdrawn by the Gizas' motion, dated January 3, 2011.

[4] The legal basis for such a reservation has never been identified by the Gizas.

The Defendants moved to dismiss the complaints, and after extensive briefing and argument by all appearing parties, this Court issued its decision of April 15, 2010, supported by a Memorandum of Law. That decision dismissed all of the asserted claims against OneWest and all of the claims against Deutsche Bank, except the Gizas' claim for rescission under MCCCDA. On May 20, 2010, the parties filed a Joint Pre-Trial statement with the Court, agreeing to a discovery plan based on the sole claim remaining after the Court's April 15th ruling.

On June 21, 2010, the Gizas filed the instant Motion to Amend and the Amended Complaint. The proposed amendments fall into two categories. First, the Gizas seek to correct several factual errors. These changes include several minor factual errors pointed out by the Court in its April 15 decision – including errors in the closing date of the mortgage loan and the date on which David filed his Chapter 13 petition. More significantly, the Gizas now claim to have discovered that four Notices of Right of Cancel were given to the Gizas – three to David and one to Linda – rather than the total of three previously alleged.[5] The Gizas also seek to assert additional claims against Deutsche Bank and OneWest, thereby attempting to draw the latter back into the case. These claims include a Chapter 93A claim; a request that the Court declare that Deutsche Bank does not have standing to enforce the underlying promissory note; and a claim against OneWest

---

[5] The Defendants assent to this amendment, and for this reason, it will be allowed. Defs.' Sur-Reply Br. 2, n.1. However, the Court must express its surprise that it took the Gizas thirteen months to discover or disclose to the Defendants and the Court that the Gizas received four Notices of Right to Rescission, instead of three. To discover or disclose such a relevant fact at this stage of the litigation suggests a certain carelessness in preparing the original complaint.

for failure to acknowledge and respond to a Qualified Written Request in violation of the Real Estate Settlement Practices Act ("RESPA").[6]

## II.   POSITIONS OF THE PARTIES

The Defendants argue that the Gizas are unjustifiably and inexplicably late in the filing of the Motion to Amend. They maintain that the Amended Complaint dramatically alters the current state of case – from a single claim to be tried against Deutsche Bank alone to a multi-claim multi-party suit that will require the retooling of discovery and trial strategy. Further, they note that over a year passed between the filing of the original complaint and the Motion to Amend and over two months since this Court's ruling on the Defendants' Motion to Dismiss, and the Gizas have failed to provide any justification for that delay – a delay described by the Defendants as particularly unjustified when all of the new claims were known to the Gizas at the time the original complaint was filed. According to the Defendants, amendment of the complaint at this late hour would substantially prejudice the Defendants by vastly expanding the scope of the case after a narrow discovery schedule had been agreed upon and particularly prejudice OneWest, forced back into a case from which it had previously been dismissed.[7]

---

[6] During briefing, the Gizas asked the Court to permit them to withdraw the RESPA count from the Amended Complaint.

[7] It appears that the Gizas have withdrawn all of the major causes of actions against OneWest in the Amended Complaint through the briefing process. All that appear to remain are the previously dismissed claims for damages and costs under MCCCDA, which the Gizas claim are simply in the Amended Complaint to be preserved for appeal, and the declaratory judgment claim that OneWest has no servicing rights to the mortgage.

The Defendants also contend that the Motion to Amend is filed in bad faith, as it contains claims that the Court previously dismissed. Finally, the Defendants argue that the arguments on which the declaratory judgment and RESPA claims rest are futile under existing case law, and therefore, introducing them into the case serves no legitimate purpose.

The Gizas remind the Court that the federal rules encourage the liberal amendment of complaints in all instances "when justice so requires," and contend that this case is one such instance. The Gizas claim that their delay in raising the new claims was primarily based upon rapidly evolving case law surrounding the validity of mortgage assignments and foreclosures. Additionally, the Gizas maintain that the Defendants would not be prejudiced by allowance of the Motion to Amend, as the Defendants have long had actual notice of all of the claims alleged in the proposed Amended Complaint. Because the Gizas sent the Defendants a Chapter 93A letter long before the Amended Complaint was filed, the Gizas argue the Defendants have known about that claim for over a year. Finally, the Gizas contend that their Chapter 93A claim was contingent on the outcome of the Court's April 15th ruling. Since the Chapter 93A claim would be viable only if the Court found the MCCCDA claim to be viable, the Gizas claim to have simply waited until after the Court's ruling to reassess their case and amend their complaint.

III.     DISCUSSION

Fed. R. Civ. P. 15(a) states "a party may amend its pleading only with . . . the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). However, leave to amend should not be granted in cases where there has

been "undue delay" or where there would be "undue prejudice to the opposing party by virtue of allowance of the amendment." Foman v. Davis, 371 U.S. 178, 182 (1962). See also Adorno v. Crowley Towing & Transp. Co., 443 F.3d 122, 126 (1st Cir. 2006), Acosta-Mestre v. Hilton Int'l of P.R., 156 F.3d 49, 51 (1st Cir. 1998).

The First Circuit Court of Appeals has considered the timeliness of motions to amend complaints in several cases. See e.g., Steir v. Girl Scouts of the USA, 383 F.3d 7, 12 (1st Cir. 2004); Grant v. News Grp. Boston, Inc., 55 F.3d 1, 6 (1st Cir. 1995) (finding a 14-month time lapse between the original complaint and amended complaint untimely); Acosta-Mestre, 156 F.3d at 52 (finding a 15-month time lapse between the original complaint and amended complaint untimely especially when discovery was nearly concluded and a pre-trial order had been approved). In Steir, that court warned that "[a]s a case progresses, and the issues are joined, the burden on a plaintiff seeking to amend a complaint becomes more exacting. . . . [T]he longer a plaintiff delays, the more likely the motion to amend will be denied, as protracted delay, with its attendant burdens on the opponent and the court, is itself a sufficient reason for the court to withhold permission to amend." Steir, 383 F.3d at 12.

In Grant, a case with a fourteen-month delay between the initial complaint and the motion to amend, the court found that delay "considerable" "in conjunction with the radical remaking of the case contemplated by the amended complaint," and noted that when "considerable time has elapsed between the filing of the complaint and the motion to amend, the *movant* has the burden of showing some 'valid reason for his neglect and delay.'" Grant, 55 F.3d at 6 (emphasis in original) (quoting Stepanischen v. Merchs. Despatch Transp. Corp., 722 F.2d 922, 933 (1st Cir. 1983), Hayes v. New England

7

Millwork Distribs. Inc., 602 F.2d 15, 19-20 (1st Cir. 1979)).  And in Grant, the court found important that the plaintiff possessed the knowledge necessary to present the claims as sought to be amended well before the amended complaint was filed.  Grant, 55 F.3d at 6.  See also Leonard v. Parry, 219 F.3d 25, 30 (1st Cir. 2000) ("What the plaintiff knew or should have known and what he did or should have done are relevant to the question of whether justice requires leave to amend under this discretionary provision."); Acosta-Mestre, 156 F.3d at 52 (affirming denial of the motion to amend in part because the plaintiff was aware or should have been aware of the additional defendant at the time of the filing of the initial complaint).

      In this case, the Gizas' Motion to Amend cannot be considered timely under any fair interpretation of First Circuit precedent.  The Gizas' delay is "considerable" – approximately thirteen months after the first Giza complaint was filed.  Accordingly, disposition of the Motion to Amend requires examination into the reasons for the delay; whether the plaintiffs knew or should have known of the factors requiring the change to the complaint at an earlier time; and the burdens on the opponent.  Here, all three weigh heavily against the Gizas.

      The Gizas offer very little by way of reasons for their delay.  The two primary excuses relate to the evolving nature of case law and a desire to await the Court's April 15th order before amending their complaint.  Neither of these arguments have merit.  By its very nature, law often evolves – but that does not excuse a change in direction by a litigant unless the change was not able to be anticipated.  But here the vast majority of the case law cited by the Gizas in support of their declaratory judgment claim was in existence

at the time the initial complaints were filed.[8] Therefore, the Gizas' failure to timely assert this claim rests solely upon them. And the Gizas' argument that their Chapter 93A claim was dependent on the outcome of the Court's April 15th order fails as well. Pleading in the alternative has been a staple of federal court practice since the advent of the Federal Rules of Civil Procedure in 1938.

The Gizas knew or should have known about *all* of the changes now sought to be made in their proposed Amended Complaint at the time they filed their original complaint. Indeed, David questioned Deutsche Bank's standing in opposition to the bank's motion for a relief from the automatic stay filed in November of 2007 – nearly 8 months before the original complaint and over a year and a half before the Motion to Amend were filed.[9] A viable Chapter 93A claim could have been made as early as July 3, 2009 (30 days after the mailing of the Chapter 93A letter). There is no reason why the Gizas waited until June 21, 2010 – nearly a year later – to amend the complaint.

Furthermore, the proposed Amended Complaint now also includes a "Count III" that does not involve any of the original Defendants. Rather, it is simply entitled "Liability

---

[8] Further, the Gizas' proposed Amended Complaint, briefing, and argument surrounding the declaratory judgment claim appear as if their counsel sought to include every miscellaneous allegation that has been in the press with regard to mortgages, notarization, robo-signing, and assignments – whether relevant, irrelevant, or grounded in any actual law or fact pertinent to this case.

[9] See Opp'n to Mot. for Relief In re Giza, 07-41782-HJB (Bankr. D. Mass. Nov. 5, 2007), ECF No. 83. The Court is permitted to take judicial notice of its own docket. See LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.), 196 F.3d 1, 8 (1st Cir. 1999) ("[t]he bankruptcy court appropriately took judicial notice of its own docket"); In re Marrama, 345 B.R. 458, 463 n.9 (Bankr. D. Mass. 2006) ("I may take judicial notice of the dockets and documents in the Debtor's two pending cases.")

of Robert B. Williams: President, Treasurer, Secretary and Director of Amcap Mortgage, Inc.". That count has now been withdrawn by the Gizas.

There would unquestionably be undue prejudice to the Defendants if the Motion to Amend were allowed. The Court's April 15th order essentially boiled this case down to a single issue dispute between Deutsche Bank and the Gizas. Allowance of the Motion to Amend would add an additional defendant, force OneWest back into the case, and compel Deutsche Bank to defend against several new claims. A pretrial order was issued May 28, 2010. The parties were ordered to complete discovery and file summary judgment motions by December 2010. Those deadlines have since been extended, but even this Motion to Amend has needlessly extended this litigation and significantly thrown off its discovery and summary judgment schedules.

And allowance of the Motion to Amend would not prejudice the Defendants alone. It would also prejudice the Chapter 13 trustee and the Gizas' other creditors. While this adversary proceeding has trudged along, David and Linda's bankruptcy cases have stood at a virtual standstill. In June of 2010, the Chapter 13 trustee filed motions to dismiss in David's and Linda's bankruptcy cases. Their combined Chapter 13 plan arrearages then totaled $4,571. In lieu of dismissing the cases, this Court ordered the debtors to each file an amended plan within 30 days. David and Linda subsequently urged the Court to vacate that order over the objection of the Chapter 13 trustee who complained of the significant arrearages. And after hearing, the motions to vacate were continued generally pending the outcome of this adversary proceeding, an adversary proceeding whose resolution would be significantly delayed were the Motion to Amend allowed in full.

And correspondingly, without a confirmable plan on the horizon, distribution payments to creditors will continue to be delayed indefinitely.

IV. CONCLUSION

"Rule 15(a)'s liberal amendment policy seeks to serve justice, but does not excuse a lack of diligence that imposes additional and unwarranted burdens on an opponent and the courts." Acosta-Mestre, 156 F.3d at 53. In this case, the Gizas knew or should have known all the information now sought to be alleged in the Amended Complaint at the outset of the case or shortly thereafter. Under those circumstances, a thirteen month delay in making those allegations is not justifiable and is prejudicial to the Defendants. Therefore, the Gizas may file an Amended Complaint which both corrects the errors made as to the dates on which events occurred and which changes the number of Notices of Right to Cancel, which the Gizas originally received. The Court DENIES leave to make the remaining proposed amendments to the complaint.[10]

An order consistent with this Memorandum will issue accordingly.

DATED: January 4, 2011

By the Court,

*[signature]*

_____
Henry J. Boroff
United States Bankruptcy Judge

---

[10] Because the Court will deny the Motion to Amend on other grounds, it need not reach the question of whether the allegations made therein are futile or made in bad faith.

11