# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS
## WESTERN DIVISION

| | | |
|---|---|---|
| In re:<br><br>DAVID GIZA,<br><br>         Debtor | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Chapter 13<br>Case No. 07-41782-HJB |
| In re:<br><br>LINDA Y. GIZA,<br><br>         Debtor | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Chapter 13<br>Case No. 09-30886-HJB |
| DAVID GIZA and<br>LINDA Y. GIZA,<br><br>         Plaintiffs<br><br>     v.<br><br>AMCAP MORTGAGE, INC.,<br>DEUTSCHE BANK NATIONAL TRUST<br>COMPANY, AS TRUSTEE, and<br>ONEWEST BANK, FSB,<br><br>         Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Adversary Proceeding<br>No. 09-03032 |

1

**MEMORANDUM OF DECISION**

Before the Court is a "Motion for Judgment on Partial Findings" (the "Motion for Judgment"), filed by defendant Deutsche Bank National Trust Company, Trustee under the Pooling and Servicing Agreement Series ITF Series NBAS 2006-C ("Deutsche Bank").  By its Motion for Judgment, Deutsche Bank alleges that plaintiffs David and Linda Giza (together, the "Gizas") have failed to offer sufficient credible evidence to support the essential elements of their claim under the Massachusetts Consumer Credit Cost Disclosure Act, Mass. Gen. Laws ch. 140D, §§ 1, *et seq.* ("MCCCDA") that their residential mortgage held by Deutsche Bank should be rescinded.  The Gizas' rescission claim is grounded on their allegation that, at the closing of their loan, the original lender failed to furnish them with all of the forms mandated by the MCCCDA.  The Gizas having completed their case and rested, and the Court having carefully reviewed the confused evidence presented, the Court finds and rules that the Gizas have failed to rebut the presumption of delivery under the MCCCDA of the relevant documents and, accordingly, have failed to meet their burden of production.  The Court's findings of fact and conclusions of law, pursuant to Rule 7052(a) of the Federal Rules of Bankruptcy Procedure, are cobbled from the parties' Joint Pre-Trial Statement and the evidence presented at trial.

I.      FACTS AND TRAVEL OF THE CASE

The Gizas are spouses residing at 15 Orchard Street in Palmer, Massachusetts (the "Property") and are debtors in these separately filed Chapter 13 cases.[1]  The Gizas purchased the Property on or about January 6, 1988, subject to a purchase-money mortgage; the

---

[1] David Giza filed a voluntary Chapter 13 case on May 10, 2007.  Linda Giza filed her voluntary Chapter 13 case on May 27, 2009.

Property has since served as their primary residence.

On April 1, 2006, the Gizas sought to refinance their mortgage with Amcap Mortgage, Inc. ("Amcap").[2]  The new loan (the "Loan") was approved and the closing (the "Closing") was conducted at the Property on May 24, 2006.  Three persons were present:  David Giza, Linda Giza, and a female closing agent (the "Closing Agent").[3]  According to the Gizas, the Closing lasted somewhere between one and two hours.  Trial Tr. June 13, 2011 at 16:12-13; 105:10-11.  David Giza executed a promissory note in favor of Amcap and both David and Linda Giza executed a mortgage in order to secure payment of the Loan.[4]  Among the various documents executed by the Gizas (generally, the "Loan Documents") were some number of Notices of Right to Cancel (the "Notices") and Truth in Lending Disclosure Statements (the "Disclosure Statements").    Trial Tr. at 18:15-21; 73:6-74:5.    Both the Notices and the Disclosure Statements included written acknowledgments of receipt (the "Acknowledgments"), acknowledging the receipt of the required number of forms (two Notices and one Disclosure Statement per borrower). Id. at 74:6-76:2.

At trial, the Gizas appeared hard-pressed to recall the actual events that took place at the Closing, including the manner in which and what documents were presented to and signed by them; however, they concede that they signed the Acknowledgments.  Id. at 75:17-76:1. Following the execution of the Loan Documents, the Closing Agent gave the Gizas a set of

---

[2] The Amcap mortgage was later assigned to Deutsche Bank on February 21, 2008 and recorded on June 24, 2008.  Although Amcap was originally named as a defendant in the adversary proceedings initiated by the Gizas, the claims against Amcap were withdrawn by the Gizas' motion on January 3, 2011.

[3] The parties designated the identity of the Closing Agent as an issue of fact to be litigated at trial; however, the issue was not addressed before the Gizas rested.  While this omission is curious, the identity of the Closing Agent is not material to the outcome of this case.

[4] The mortgage was granted to Mortgage Electronic Registration Systems, Inc. ("MERS") and its successors and assigns, as nominee for Amcap and its successors and assigns.

3

copies of the Loan Documents (the "May 2006 Documents"). The Gizas could not recall whether the May 2006 Documents given by the Closing Agent to the Gizas were loose and then placed by Linda Giza in a folder or envelope or whether they were given to her by the Closing Agent in a folder or envelope. Id. at 20:14-24. In any event, Linda Giza testified that she took the May 2006 Documents and put them in a safe located on the Property. Id. at 21:24-22:2. The Gizas testified that they did not look at or examine the May 2006 Documents prior to Linda Giza putting them in the safe on the Property and have no recollection of looking at or examining the May 2006 Documents until February 2008. Id. at 28:19-30:13; 107:22-108:8; see also Joint Pre-trial Statement, Docket No. 149 ("JPTS"), at ¶ 17-18.

At some point in 2007, the Gizas sought to list the Property for sale. In an effort to clean the Property in preparation for sale, some documents, including at least one document related to the Loan, were relocated to a storage facility not on the Property.

On May 10, 2007, David Giza filed a voluntary Chapter 13 case in this Court. In re David Giza, No. 07-41782. Some time between the commencement of that case and February 2008, Linda Giza claims to have discovered that the "seam" on the original folder or envelope containing the May 2006 Documents "let loose." Trial Tr. at 30:7-21; see also JPTS, at ¶ 23. She then separated the May 2006 Documents into different containers. Trial Tr. at 31:20-24; see also JPTS, at ¶ 23. Linda Giza testified that she put the papers relating to David Giza into a "Landry, Lyons & White" folder, but she could not recall for certain the second container used to hold the remaining papers nor whether she put them back in the safe.[5] Trial Tr. at 31:25-32:13; 33:7-14. Linda Giza further testified that at some time between David Giza's case filing and February 2008, she brought the Landry, Lyons & White folder to the Gizas' attorney's

---

[5] What method was used to separate the May 2006 Documents and what constituted what she characterized as "David's papers" was not established.

4

office where copies were made.  Id. at 23:5-24:5; 32:17-21.  Afterwards, Linda brought her

papers home, and put them back in the safe located on the Property.[6]  Id. at 26:6-13; 32:22-

33:6.

On February 4, 2008, Linda Giza claims to have taken documents out of the safe

located on the Property and handed them to David Giza who then took them to the Gizas'

attorney's office (the "February 2008 Documents").  Id. at 34:6-22; 108:10-109:25.   The

February 2008 Documents were scanned at the Gizas' attorney's office and remained in David

Giza's custody throughout the scanning.  David Giza then took the February 2008 Documents

home and Linda Giza put them back in the safe located on the Property.  Id. at 35:22-36:1.

On June 14, 2008, the Gizas' attorney sent a notice of rescission (the "2008 Rescission

Letter") to Amcap and Deutsche Bank on behalf of the Gizas, claiming Truth in Lending Act

("TILA") violations[7] as grounds for the Gizas rescinding the Loan.  See Pls.' Ex. 2.

On October 30, 2008, Linda Giza claims to have again personally delivered documents

taken from the safe on the Property to the Gizas' attorney's office for scanning (the "October

2008 Documents").[8]   The October 2008 Documents remained in Linda Giza's custody

throughout the scanning and subsequently went home with her where she put them back in the

safe located on the Property.  Trial Tr. at 37:3-38:8.

On May 27, 2009, Linda Giza filed a voluntary Chapter 13 case in this Court.  In re

Linda Giza, No. 09-30886.  Three days later, on May 30, 2009, the Gizas instituted the instant

adversary proceeding in David Giza's case against Amcap, Deutsche Bank, and OneWest

---

[6] Whether the "papers" were placed back in the Landry, Lyons, & White folder when she brought them home was not established.

[7] See 15 U.S.C. § 1635(a).

[8] Again, from which folder(s) these documents were taken or if the October 2008 Documents were contained in a folder has not been established.

Bank, FSB ("OneWest"), the servicer of the Loan.  David Giza and Linda Y. Giza v. Amcap mortgage, Inc., Deutsche Bank National [Trust] Company, as Trustee, and OneWest Bank, FSB, A.P. No. 09-04099.

On June 2, 2009, the Gizas' attorney sent a second notice of rescission (the "2009 Rescission Letter") to Amcap, Deutsche Bank, and OneWest on behalf of the Gizas, this time citing TILA *and* MCCCDA violations[9] as grounds for the Gizas rescinding the Loan.  See Pls.' Ex. 3.

On June 25, 2009, three weeks after David Giza filed his adversary proceeding, Linda Giza filed a nearly identical adversary proceeding in her bankruptcy case, although she added claims for violation of the automatic stay by the defendants with regard to her interest in the Property.  Linda Y. Giza v. Amcap mortgage, Inc., Deutsche Bank National Trust Company, [as Trustee], and OneWest Bank, FSB, A.P. No. 09-03032. On June 3, 2010, the two adversary proceedings were consolidated.

Through their Complaint, the Gizas sought to (1) have this Court determine the validity and extent of the recorded mortgage in light of the 2008 and 2009 Rescission Letters and (2) recover, under TILA and MCCCDA, statutory damages, injunctive relief, costs, and attorney's fees for the failure of the defendants to honor their mortgage rescission.[10] In response to the Gizas' Complaint, Defendants Deutsche Bank and OneWest moved to dismiss.  On April 15, 2010, this Court issued its decision dismissing all of the Gizas' asserted claims against OneWest and all of the claims against Deutsche Bank, save for the Gizas' claim for rescission under MCCCDA.  Giza v. Amcap Mtg., Inc. (In re Giza), 428 B.R. 266 (Bankr. D. Mass. 2010)

---

[9] See Mass. Gen. Laws ch. 140D, § 10(a).

[10] The Gizas also sought to "reserve" a cause of action under Massachusetts General Laws Chapter 93A ("Regulation of Business Practices for Consumers Protection").

6

("Giza I").

On May 20, 2010, the parties filed a Joint Pre-Trial Statement with this Court, agreeing to a discovery plan with respect to the Gizas' remaining claim. In the meantime, sometime in early May 2010, Linda Giza claims to have found additional documents related to the Amcap Loan in a storage facility not located on the Property. (She testified at trial to having no recollection as to how they got there. Trial Tr. at 40:7-41:19; see also JPTS, at ¶ 36.) On May 25, 2010, the Gizas personally delivered to their attorney, various documents related to the Loan, including those discovered in the storage facility, as well as documents related to the adversary proceeding (the "May 2010 Documents"). Trial Tr. at 40:7-16; see also JPTS, at ¶ 37. The May 2010 Documents were scanned at the Gizas' attorney's office and remained in the Gizas' custody throughout the scanning. Upon completion of the scanning, the May 2010 Documents were sealed in a large envelope.[11]

Throughout June and July 2010, the May 2010 Documents were inspected and scanned on multiple occasions both on and away from the Property. JPTS, at ¶ 41-44. On June 11, 2010, one of the Gizas' attorneys came to the Property and inspected the May 2010 Documents. The inspection was conducted on the Property and in the Gizas' presence. The Gizas testified that the attorney observed them put the May 2010 Documents in the safe located on the Property.[12] Trial Tr. at 44:6-7. At trial, Linda Giza was unable to recall whether the May 2010 Documents were put into a new envelope prior to putting them in the safe, although she testified that someone (she could not recall who) signed the flap to the envelope. Id. at 44:8-15.

---

[11] The travel of the May 2010 Documents after being scanned and sealed has not been established.

[12] The Gizas did not present the attorney as a witness at trial.

On June 21, 2010, the Gizas filed a Motion to Amend and the instant Amended Complaint. The proposed amendments sought to correct several factual errors and assert additional claims against Deutsche Bank and OneWest, in an attempt to draw OneWest back into the case. Most significant was the Gizas' discovery and amended allegation that a total of *four* Notices, rather than a total of three as previously alleged, were actually given to the Gizas at the Closing, but three to David Giza and only one to Linda Giza. On January 4, 2011, this Court denied all of the Gizas' substantive requests to amend the Complaint, with the exception of permitting the Gizas to change the number of Notices received. Giza v. Amcap Mtg., Inc. (In re Giza), 441 B.R. 395 (Bankr. D. Mass. 2011) ("Giza II").[13]

On February 28, 2011, Deutsche Bank filed a Motion for Summary Judgment arguing that the Gizas' claim under the MCCCDA was untimely, as they failed to exercise their right to rescind within the three-day period required by § 10(a) of the MCCCDA and therefore, could not state a claim under the MCCCDA as a matter of law. Deutsche Bank further contended that because the Gizas each signed the Acknowledgements, there existed a legal presumption that the Gizas did in fact receive the required number of Notices and Disclosure Statements. The Gizas objected to Deutsche Bank's Motion for Summary Judgment, maintaining that they had a legitimate claim under the MCCCDA and that there were genuine issues of fact and law to be determined by this Court. Following a hearing held on April 21, 2011, this Court denied Deutsche Bank's Motion for Summary Judgment from the bench and set a new trial date for June 13 and 17, 2011.

On June 13, 2011, this Court commenced trial and Deutsche Bank simultaneously filed the Motion for Judgment that is currently before this Court. Both David and Linda Giza testified

---

[13] In that opinion, this Court expressed its "surprise" that it took over thirteen months from the original commencement date of the adversary proceeding for the Gizas to discover and/or disclose the number of Notices they actually received at the Closing.

8

and a total of 20 exhibits were admitted into evidence.  At the conclusion of the Gizas'

evidence, this Court took the Motion for Judgment under advisement, suspending the balance

of the trial pending a ruling thereon.  The Gizas declined to submit a new memorandum in

response to the Motion for Judgment and instead asked this Court to take notice of their "Brief

in Opposition to Defendant's Motion for Summary Judgment."  Trial Tr. at 132:5-7.


II.      POSITIONS OF THE PARTIES

The Gizas argue that they properly rescinded the Loan pursuant to Chapter 140 D, § 10

of the MCCCDA and § 1635 of TILA because Amcap failed to deliver to each of them the

required number of Notices and Disclosure Statements.  And because Deutsche Bank failed to

honor the Gizas' valid notices of rescission, the Gizas claim that they are vested with the right

to retain the net Loan proceeds and Deutsche Bank therefore has no allowable claim in the

Gizas' underlying bankruptcy cases.

The Gizas concede that their execution of the Acknowledgments at the Closing gives

rise to a rebuttable presumption that they each did in fact receive two Notices and one

Disclosure Statement.   However, the Gizas contend that they have presented sufficient

evidence to rebut this presumption.

Deutsche Bank objects to the Gizas' claims on the facts and as a matter of law.  First,

Deutsche Bank argues that the Gizas cannot avoid the MCCCDA's time bar for rescission by

claiming that they have an extended right to rescind due to the alleged missing documents.

Deutsche Bank maintains that even if the Gizas are able to show that they did not receive the

requisite number of Notices and Disclosure Statements, the missing forms should be

considered a mere "technical violation" - since the Gizas' claim is not that the Notices and

Disclosure Statements were deficient, but rather that they simply received an insufficient number of them.  Deutsche Bank further asserts that a technically incorrect Notice complies with TILA and the MCCCDA if it substantially informs the borrower of the right to cancel the loan.  Second, Deutsche argues that even if the Gizas could extend their right to rescind as a matter of law based upon the claim of receiving an insufficient number of Notices and Disclosure Statements, they have not provided sufficient credible evidence to overcome the presumption of receipt created by the Gizas' Acknowledgments that they each received two copies of the Notice and one of the Disclosure Statement.

In response to Deutsche Bank's first argument, the Gizas maintain that the plain language of the MCCCDA allows them to rescind the Loan for a period of four years after its consummation because the original mortgage lender did not deliver to them the required number of Notices and Disclosure Statements.  And although the Gizas do admit to the collective receipt of four Notices and one Disclosure Statement per their Amended Complaint, they argue that they have demonstrated that Linda Giza received only one of those Notices and that the one Disclosure Statement was addressed to both David and Linda Giza, leaving one Notice and one Disclosure Statement undelivered.  In addition, the Gizas point to several authorities holding that the failure to deliver the requisite number of forms during a closing should not be considered a mere technical violation, as Deutsche Bank claims.

In response to Deutsche Bank's second argument, the Gizas do not dispute that they each signed the Acknowledgments nor do they dispute that their signatures create a rebuttable presumption of delivery.  The Gizas do, however, again maintain that they have presented sufficient evidence to allow this Court to find that they have rebutted that presumption.

10

III.    DISCUSSION

### A. Summary Judgment on Partial Findings

A motion for judgment on partial findings in a bench trial is governed by Rule 52(c) of the Federal Rules of Civil Procedure ("Rule 52(c)"), as made applicable to adversary proceedings in bankruptcy by Rule 7052 of the Federal Rules of Bankruptcy Procedure. Under Rule 52(c), "[i]f a party has been fully heard on an issue during a nonjury trial and the court finds against the party on that issue, the court may enter judgment against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue." Fed. R. Civ. P. 52(c). Such a judgment must be "supported by findings of fact and conclusions of law as required by Rule 52(a)." Id. A court should therefore enter a judgment under Rule 52(c) "[w]hen a party has finished presenting evidence and that evidence is deemed by the [judge] insufficient to sustain the party's position." Morales Feliciano v. Rullan, 378 F.3d 42, 59 (1st Cir. 2004). A motion for judgment on partial findings should be granted, "where the plaintiff fails to make out a *prima facie* case, or despite a *prima facie* case, the court determines that the preponderance of evidence goes against the plaintiff's claim." Mosher v. Evergreen Management, Inc. (In re Mosher), 432 B.R. 472, 475 (Bankr. D. N.H. 2010). Such a motion does not require the court to "draw any special inferences in the nonmovant's favor, or consider the evidence in the light most favorable to the nonmoving party. Instead, the court must [weigh] the evidence, resolv[e] any conflicts, and decid[e] where the preponderance lies." Id.

### B. Relevant TILA and MCCCDA Background

TILA was enacted as a federal consumer protection statute with "the broad purpose of

promoting 'the informed use of credit' by assuring 'meaningful disclosure of credit terms' to consumers." Ford Motor Credit Co. v. Milhollin, 444 U.S. 555, 559 (1980) (quoting 15 U.S.C. § 1601(a)). The MCCCDA is a Massachusetts statute " 'closely modeled' " on TILA.  Fuller v. Deutsche Bank Nat'l Trust Co. (In re Fuller), 642 F.3d 240, 243 (1st Cir. 2011) (quoting Mayo v. Key Financial Servcies, Inc., 424 Mass. 862, 864 (1997)).  "[T]he regulations promulgated under TILA and [M]CCCDA are substantially similar. . . . The only differences are with respect to the statutes of limitation for rescission and damage claims."  Whitley v. Rhodes Fin. Servs., Inc. (In re Whitely), 177 B.R. 142, 147-48 (Bankr. D. Mass. 1995). [14]  Accordingly, "[M]CCCDA 'should be construed in accordance with federal law.' " In re Desroisiers, 212 B.R. at 722 (citations omitted).

---

[14] As explained by this Court in Desroisiers v. Transamerican Fin. Corp. (In re Desrosiers),

> [t]he two statutes are substantially the same, except that TILA contains a one-year statute of limitations for a damage claim, § 1640(e), and a three-year statute of limitations for a rescission claim, § 1635(f), while the limitation period for both remedies under CCCDA is four years, Mass. Gen. Laws ch. 140D, § 10(f) (statute of limitations regarding right of rescission), Mass. Gen. Laws ch. 260, 5A (1997) (statute of limitations regarding right to damages).

212 B.R. 716, 722 (Bankr. D. Mass. 1997) (citations omitted).  This Court further noted in In re Desroisiers that, although the Board of Governors of the Federal Reserve exempted credit transactions subject to the MCCCDA

> 'from chapters 2 and 4 of the Federal act,' pursuant to authority granted it in 15 U.S.C. § 1633 (See 48 Fed.Reg. 14882, 14890 (1983)) and Chapter 2 of the statute includes §§ 1631 through 1646, the Board also enacted a regulation providing that '[n]o exemptions granted under this section shall extend to the civil liability provisions of section [1640] and [1641] of the act.' Regulation Z, 12 C.F.R. § 226.29(b)(1) (1997). Accordingly, a Massachusetts resident can bring a claim for damages under § 1640 of TILA, but cannot rescind a credit transaction under § 1635 of that statute; he or she can pursue that remedy only under CCCDA. See Botelho, 195 B.R. at 565; Myers v. Federal Home Loan Mortgage Co. (In re Myers), 175 B.R. 122, 125–26 (Bankr.D.Mass.1994). Nevertheless, it is still appropriate to refer to the provisions of the federal statute and regulations at issue here because they do not differ from their Massachusetts counterparts in any material way.

Id. at n.6; See also Giza I, at 272-73.

Chapter 140D, §10(a) of the MCCCDA allows a borrower to rescind a loan that is secured by the borrower's principal dwelling if the creditor did not provide to the borrower all disclosures required by the statute.  See Mass. Gen. Laws ch. 140D, § 10(a) (2005).  The borrower has

> the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and **rescission forms** [(the Notices)] required under this section ***together with*** a **statement containing the material disclosures** [(the Disclosure Statement] required under this chapter, whichever is later.

Id.  (emphasis added).

The related regulation, "Notice of Right to Rescind," provides that:

> In a transaction subject to rescission, a creditor shall deliver ***two copies*** **of the notice of the right to rescind to** ***each*** **consumer** entitled to rescind (one copy to each if the notice is delivered in electronic form in accordance with the consumer consent and other applicable provisions of the E-Sign Act). The notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose the following:
>
>> 1. The retention or acquisition of a security interest in the consumer's principal dwelling.
>> 2. The consumer's right to rescind the transaction.
>> 3. How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.
>> 4. The effects of rescission, as described in 209 CMR 32.23(4).
>> 5. The date the rescission period expires.

209 C.M.R. § 32.23(2)(a) (2005)(emphasis added).  As cited above, Chapter 140D, § 10(a) of the MCCCDA entitles each borrower in a residential mortgage transaction to a disclosure statement.[15]  See Mass. Gen. Laws ch. 140D, § 10(a).  Chapter 140D, § 12(a) delineates the contents of the "statement containing the material disclosures" (13 in total) to which § 10(a) refers.  Id. at § 12(a).

---

[15] The plain language of the statute, "***a*** statement containing the material disclosures," indicates the singular nature of the requirement that each borrower receives one disclosure statement.

TILA likewise requires that lenders "clearly and conspicuously disclose" to **each** borrower, his or her rights under the transaction, including the right to rescind.  See 15 U.S.C. § 1635(a).  Regulation Z expands on this disclosure standard, providing the proper form of such disclosures:

> The creditor shall make the disclosures required by this subpart clearly and conspicuously in writing, in a form that the consumer may keep. … The disclosures shall be grouped together, shall be segregated from everything else, and shall not contain any information not directly related to the disclosures required under § 226.18 [("Contents of disclosures")]....

12 C.F.R. § 226.17(a)(1)(2009).[16]  Additionally, "[i]n a transaction subject to rescission" under TILA, "a creditor shall deliver **two copies of the notice of the right to rescind to each consumer** entitled to rescind."[17]  Id. at §226.23(b)(1) (emphasis added).

Both TILA and the MCCCDA provide that "the period for canceling a residential loan transaction ends three business days after the latest of three events: the closing; the date the consumer receives required Truth–in–Lending disclosures; or the date the consumer receives proper notice of the right to cancel." Dimare v. Ameriquest Mortgage Co. (In re Dimare), 2009 WL 5206628, at *6 (Bankr. D. Mass. 2009) (citing Mass. Gen. Laws ch. 140D, § 10(a)). However, under the MCCCDA, if the creditor fails to deliver the Disclosure Statement or Notices, then the borrower may rescind his loan up to four years following the consummation of the loan.  See Mass. Gen. Laws ch. 140D, § 10(f).  To rescind, the borrower must notify the

---

[16] Here too the plain language of the regulation that, "[t]he creditor shall make the disclosures required by this subpart clearly and conspicuously in writing, in **a form** that the consumer may keep," indicates the singular nature of the disclosure statement requirement under TILA.  § 226.17(a)(1).

[17] The content requirements of the TILA Notice mirror verbatim that of the MCCCDA Notice.  See § 226.23(b)(1)(i)-(v).

creditor of his or her intent to do so, in accordance with regulations of the commissioner. [18]  Id.

at § 10(a).

### C.  The Burden of Proof and the Rebuttable Presumption

Under the MCCCDA, a borrower's written acknowledgment that he or she received two

Notices and one Disclosure Statement creates a rebuttable presumption that the borrower did

in fact receive those forms:

> Written acknowledgment of receipt of any disclosures required under this chapter, or any
> rule or regulation issued thereunder, by a person to whom information, forms, and a
> statement is required to be given pursuant to this section does no more than create a
> rebuttable presumption of delivery thereof.

Mass. Gen. Laws ch. 140D, § 10(c). [19]  However, both the MCCCDA and TILA are silent as to

the evidence and weight of evidence required to overcome this rebuttable presumption.  See

Sousa v. Wells Fargo Bank (In re Sousa), No. 07-1215-JMD, 2011 WL 917853, at *5 (Bankr.

---

[18] Mass. Gen. Laws ch. 140D, § 10(b) prescribes the process that is to occur once a consumer takes
the initial steps to rescind the loan.

[19] In Cromwell v. Countrywide Home Loans, Inc., et al., (In re Cromwell), Judge Hillman of this District
found and ruled the language of the Acknowledgment: " '[t]he undersigned each acknowledge receipt of
two copies of NOTICE OF RIGHT TO CANCEL,' " to be "ambiguous":

> The placement of the word 'each' before 'acknowledge' renders the phrase susceptible
> to two meanings.  First, that the Debtors acknowledged each received two copies as the
> Defendants' assert, or second, that they each acknowledged receipt of a total of two
> copies as the Debtors suggest.

No. 08-159444-WCH, 2011 WL 4498875, at *17 (Bankr. D. Mass. 2011).  Accordingly, Judge Hillman
ruled that "the ambiguity must be resolved against the drafter of the Acknowledgment such that it did
not create a presumption of adequate delivery of a total of four copies of the [Notice]." Id. (citing LFC
Lessors, Inc. v. Pac. Sewer Maint. Corp., 739 F.2d 4, 7 (1st Cir. 1984) ("an ambiguous contract should
be construed against the drafting party"); Chelsea Indus., Inc. v. Accuray Leasing Corp., 699 F.2d 58,
61 (1st Cir. 1983) ("[I]n case of doubt, an instrument is to be taken against the party that drew it"); ER
Holdings, Inc. v. Norton Co., 735 F.Supp. 1094, 1100 (D. Mass. 1990) ("Massachusetts law construes
ambiguous contractual language against the drafter")).

This Court need not reach the issue before Judge Hillman.  Even if the language were
ambiguous as capable of the two meanings offered in Cromwell, the Gizas cannot rely on either as a
rebuttal to the presumption of delivery where they did not testify with any assurance or consistency as
to what they received, where they put it or what happened to it thereafter.

D.N.H. 2011); Jaaskelainen v. Wells Fargo Bank, N.A. (In re Jaaskelainen), 391 B.R. 627, 641 (Bankr. D. Mass. 2008), aff'd in part, vacated and remanded in part, 407 B.R. 449 (2009).[20]  As a result, the courts of the First Circuit have applied different approaches in order to determine what and how much evidence is sufficient to rebut the presumption of receipt.  The "Bursting Bubble" theory and the "Folder" theory are the two approaches most frequently applied depending on the evidence presented.  For the reasons that follow, the Gizas fail to rebut the presumption of delivery under either approach.

Under the "Bursting Bubble" theory, "a party need only introduce rebutting evidence that is sufficient to support a finding contrary to the presumed fact." In re Sousa, 2011 WL 917853, at *5 (citing 2 McCormick on Evidence § 344).   When the Gizas each signed the Acknowledgments, a rebuttable presumption of receipt arose in Deutsche Bank's favor. Accordingly, the Gizas have the burden of going forward and presenting evidence that would support a finding that they never received the requisite number of Notices and Disclosure Statements.

The Bankruptcy Court for the District of New Hampshire was presented with the same issue in In re Sousa.  See 2011 WL 917853.  There, the Sousas' (the borrowers) "credible testimony" was sufficient for the court to find that "the presumption of delivery of the notice of the right to rescind was rebutted." Id. at *7.  Judge Deasy characterized the Sousas' testimony as "consistent, persuasive, and … based on their specific recollections." Id.

At trial, the Sousas presented only their testimony to rebut the presumption of delivery. However, both Mr. and Mrs. Sousa's testimony recounting the events were unshakeable. The

---

[20] The District Court affirmed the Bankruptcy Court's ruling that Appellants had violated the MCCCDA by failing to provide debtors each with two copies of the Notice of Right to Cancel and vacated and remanded the Bankruptcy Court's determination that rescission may not be conditioned upon tender by debtors.  Wells Fargo Bank N.A. v. Jaaskelainen, 407 B.R. 449, 463 (D. Mass. 2009).  While not relevant here, this Court has expressed a different view as to the latter issue. See Giza I at 273-276.

Sousas described a closing process where they took the time to review each document they

signed.  The Sousas testified that they not only signed, but also read, the acknowledgements

of receipt.  Additionally, however, the Sousas testified that they were told by the closing agent

that the copies of all the closing documents, including the Notices and Disclosure Statements,

would be provided at the end of closing, but they never were.

Applying the Bursting Bubble theory, Judge Deasy began with Federal Rules of

Evidence Rule 301 in his evaluation of whether the Sousas had met their burden of rebutting

the presumption of delivery:

> A presumption imposes on the party against whom it is directed the burden of going
> forward with evidence to rebut or meet the presumption, but does not shift to such party
> the burden of proof in the sense of the risk of nonpersuasion, which remains throughout
> the trial upon the party on whom it was originally cast.

Fed. R. Evid. 301.  The court reasoned that, "[b]ecause a borrower's sworn testimony or

affidavit is considered evidence, such evidence may rebut the presumption if it is credible and

contradicts the presumed fact."  In re Sousa, at *6.[21]  Judge Deasy found that at trial the

Sousas argued "unequivocal[ly] that they did not receive any copies of the closing packet at

any point in time [and made] every effort to acquire the paperwork."  Id.  Accordingly, he found

that the Sousas' testimony "both disposed of the possibility that copies of the notice of right to

---

[21] The Court noted the "split over whether a borrower's testimony of non-receipt [by itself] is enough to rebut the presumption of delivery in TILA."  In re Sousa, at *6.  Compare CUNA Mut. Ins. Group v. Williams, 185 B.R. 598, 599 (B.A.P. 9th Cir. 1995) ("The law in this circuit is that denial of receipt does not rebut the presumption."); Rhoades v. Credithrift, Inc. (In re Rhoades), 80 B.R. 938, 941 (Bankr. C.D. Ill. 1987) (holding something more than denial of receipt is required); McCarthy v. Option One Mortg. Corp., 362 F.3d 1008, 1012 (7th Cir. 2004) (holding that mere assertion of non-receipt is not enough to raise a genuine issue of fact as to compliance with the regulation), with Stutzka v. McCarville, 420 F.3d 757, 762 (8th Cir. 2005) (stating the debtor's affidavit would have at least rebutted the presumption of delivery); Williams v. First Gov't Mortg. and Investors Corp., 225 F.3d 738, 751 (D.C. Cir. 2000) (rejecting the district court's legal standard that the plaintiff's testimony, on its own, was insufficient to rebut the presumption of delivery); Williams v. Gelt Fin. Corp (In re Williams), 232 B.R. 629, 641 (Bankr. E.D. Pa. 1999) ("[I]t's not clear what else a consumer *could* present to 'prove the negative' of non-receipt other than testimony of the same."); Underwood v. American Home Mortg. Corp. (In re Underwood), 66 B.R. 656, 662 (Bankr. W.D. Va. 1986) (finding that the debtor's testimony combined with discrepancies in dates on the TILA forms was enough to rebut the presumption).

cancel were actually provided and was credible" and therefore, they successfully rebutted the presumption of delivery. Id.

Unlike the testimony provided by the Sousas, the Gizas' testimony at trial was inconsistent, unpersuasive and based on confused and fragmented recollections. The Gizas could neither recall the identity of the Closing Agent nor the actual events of the Closing itself. Further, the Gizas conceded having signed the Acknowledgments without any actual knowledge of whether they did in fact receive the documents they were acknowledging to have received. Finally, the Gizas testified that they did not look at or examine the Loan Documents (there, the May 2006 Documents) upon receiving them or before putting them in a safe on the Property. Unlike the debtors in In re Sousa, the Gizas' testimony did not eliminate the possibility that the correct number of copies of the Notice were actually provided at the Closing. Undoubtedly, the Gizas failed to rebut the presumption of delivery under the Bursting Bubble theory.

Under the "Folder" theory (also known as the "Envelope" theory), a party "claim[s] that all of the documents that [he or she] received at the closing were contained in an envelope." Jackson v. New Century Mortgage Corp., 320 F.Supp.2d 608, 611 (E.D. Mich. 2004). "The sufficiency of the 'folder theory' is related to the reliability of the folder itself." In re Jaaskelainen, 391 B.R. at 642. The presumption has only been rebutted when the integrity of the Closing Booklet has been established through credible witness testimony. Id.; See also Jackson, 320 F.Supp.2d at 612.

In the instant case, the Gizas submitted the documents they presented at their February 2011 depositions, which they then maintained and still maintain to represent the documents they received at the Closing (the "February 2011 Documents"). See Pls.' Exs. 1(a) and 1(b).

18

The February 2011 Documents contain four Notices:  three bearing David Giza's name at the

"Customer's Signature" line and one bearing Linda Giza's name at the "Customer's Signature"

line, though all four list "David Giza, Linda Y. Giza" as the "Borrower(s)." Id.  The February

2011 Documents also include one Disclosure Statement bearing both David Giza's and Linda

Giza's names at the signature line and lists "David Giza, Linda Y. Giza" as the "Borrower(s)."

Id.  However, the February 2008 Documents, the documents on which the 2008 Rescission

Letter was sent and the initial Complaint was based, contained only three Notices.[22]  It is with

this unexplained discrepancy that the Gizas fail under the Folder theory to overcome the

presumption that they received only the documents comprising the February 2011 Documents.

The Gizas have referenced as many as five versions of the Loan Documents to account for the

inordinate amount of times the Loan Documents were handled between May 24, 2006 and

trial.[23]  Even if the Gizas were able to show that the February 2011 Documents were the only

documents they received at the Closing, the Folder theory, without more, is insufficient to rebut

the presumption that they each received two copies of the Notice. See Wells Fargo Bank, 407

B.R. at 456; Jackson, at 612.  The Court does not find that either of the Gizas testified in a

knowingly false way; however, the best characterization of their testimony is that they do not

know exactly what they received at the Closing, nor are they *certain* as to what happened

thereafter to those documents that they did receive.  All they can say with any assurance is

---

[22] See Plaintiffs' June 21, 2010 Motion to Amend:  "Two recent reviews of the May 24, 2006 closing package (which took place subsequent to the filing of the complaint in this matter) reveal that a total of four Notices of Right to Cancel are contained in the closing package, three of the Notices are addressed to plaintiff husband David Giza and only one is addressed to plaintiff wife Linda Giza. Reviews of the presented closing package which took place prior to the filing of the complaint in this mater revealed only two Notices of the Right to Cancel addressed to plaintiff husband David Giza and only one addressed to plaintiff wife Linda Giza.  The Complaint is being amended to clarify what was and wasn't given the plaintiffs."

[23] The May 2006 Documents; the February 2008 Documents; the October 2008 Documents; the May 2010 Documents; and the February 2011 Documents (Pls.' Exhibit 1(a) and 1(b)).

that the documents which they have been able to locate do not appear to include all of the disclosures which they ought to have received from the Closing Agent.  They cannot say with certainty that they never received those documents which they are now unable to locate.  Under these circumstances, the Folder approach must fail as well.

IV.    CONCLUSION

The MCCCDA's silence as to the standard that a party must meet to rebut the presumption of delivery does not mean that no such standard exists.  Nor does it mean that bare allegations and haphazard documentary evidence of nonreceipt are sufficient to rebut the presumption.  The inability of the Gizas to testify with certainty as to what they received at Closing, coupled with the confusing travel and custody of the documents which they did receive, are singly and together insufficient to rebut the presumption of delivery of those relevant documents as provided as a matter of law under the MCCCDA.  For the foregoing reasons, Defendant's Motion for Judgment must be GRANTED.

An order consistent with this Memorandum will issue accordingly.

DATED: October 12, 2011            By the Court,

_____
Henry J. Boroff
United States Bankruptcy Judge